In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2440

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DAVID H. ENGLAND,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Western Division.
No. 04 CR 50068—**Philip G. Reinhard**, *Judge*.

ARGUED JANUARY 21, 2009—DECIDED FEBRUARY 13, 2009

Before POSNER, FLAUM, and WOOD, *Circuit Judges*.

FLAUM, *Circuit Judge*. A jury convicted defendant-appellant David H. England of one count of illegal possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and three counts of obstruction of justice under 18 U.S.C. §§ 1512(b)(1), 1512(b)(2)(B), and 1512(a)(2). On April 27, 2006, the district court sentenced England to 262 months' imprisonment. England appealed his conviction and sentence to the Seventh Circuit. On November 7, 2007,

we affirmed England's conviction, but we vacated his sentence and remanded his case back to the district court for resentencing. *United States v. England*, 507 F.3d 581 (7th Cir. 2007). On June 2, 2008, the district court conducted a new sentencing hearing and sentenced England to 210 months. England now appeals that sentence. For the following reasons, we vacate England's sentence and remand for resentencing.

## I. Background

Police arrested England for allegedly breaking a car window with the butt of a gun on September 15, 2004. While in custody, England called his sister, Dawn Bull, and asked her to move the car to his grandmother's house and "put a tarp over it." He also called his brother-in-law, Robert Bull, inquiring as to the whereabouts of the car and telling Bull not to let anyone use it. On September 26, after moving the car, England's sister and mother found a blue duffle bag in the engine compartment. Concerned about the contents of the bag, they flagged down a police officer who removed it and found a bloodied gun inside. Police conducted DNA analysis on the recovered blood and matched the sample to England.

Upon learning of the gun's recovery, England became concerned that his sister and mother were cooperating with police. On September 27, England called his brother-in-law and told him to make sure that his sister and his mother "don't get out o' hand" and told him to "control them women." Later, on November 1, he also asked his sister to corroborate his alibi, saying that he did not

"understand why a . . . couple of my family members can't . . . recognize they were up there at Barnes and Noble that particular day, and they seen me up there." His sister Dawn refused.

On November 23, a federal grand jury indicted England. The indictment charged one count of unlawful possession of a firearm by a felon under 18 U.S.C. § 922(g)(1).

On December 15, England learned that his brother-in-law had been cooperating with the police, which angered England. He could not call his brother-in-law directly as Bull had blocked all calls from the prison, so England called his father, Ben England, instead. He told his father that he would "put some bullets in somebody's head" and asked his father to "talk with [Bull] man to man." On December 27, England went further, asking his father to "go relay a message to Robert" that if he "shows up to court, when I walk outta prison in fifteen years, I'm 'onna fuckin' murder his motherfuckin' ass."

On March 1, 2005, a grand jury issued a superseding indictment, tacking on two counts of witness tampering and one count of threatening a witness. Count II charged England with attempting to persuade a witness to provide a false alibi for him under 18 U.S.C. § 1512(b)(1). Count III charged England with attempting to cause witnesses to conceal evidence under § 1512(b)(2)(B). Count IV charged England with threatening physical force against a witness, his brother-in-law, Robert Bull, in order to influence his testimony under § 1512(a)(2).

England represented himself at trial, which was held on January 3-6, 2006. With respect to Count IV, at trial Eng-

land's father testified that he never relayed the threats to Bull. Bull testified that England never directly threatened him, and he did not learn of England's statements until the government alerted him later in the investigation. On January 6, the jury convicted England on all four counts.

At sentencing, the district court requested briefing on the appropriate guidelines section to apply to Count IV, which charged threatening physical force against a witness. The presentence investigation report (PSR) stated that U.S.S.G. § 2A2.1(a)(1) was appropriate. That section covers "Assault with Intent to Commit Murder; Attempted Murder" and has a base offense level of 33. The court, however, directed both parties to brief whether U.S.S.G. § 2J1.2 might be more appropriate. That section covers "Obstruction of Justice" and would result in an offense level of 22.[1] The court stated, "I think 2J1.2(a) probably is [applicable] because this is only a threat. It's not an attempt that could have been charged or that is the alternate in that section."

However, the court ultimately found that § 2A2.1 was appropriate. In so doing, the court first looked to the statutory index in Appendix A and located 18 U.S.C. § 1512(a). The Appendix indicated that § 1512(a) applied

---

[1] The base offense level set out in § 2J1.2(a) is 14, with 8 levels added by § 2J1.2(b)(1)(A) "[i]f the offense involved causing or threatening to cause physical injury to a person, or property damage, in order to obstruct the administration of justice."

to four separate guidelines sections. The court indicated that § 2J1.2 was not one of the four guidelines sections listed in the index. Pursuant to our holding in *United States v. Lansas*, 324 F.3d 894 (7th Cir. 2003), the court reasoned that "Assault with Intent to Commit Murder; Attempted Murder" was the most germane of the listed sections, and it stated that it had to "apply the offense guidelines referenced in the statutory index to the statute of conviction unless the case falls within the limited stipulation exception," which was inapplicable. Although the court found it "somewhat difficult in this case," it applied § 2A2.1 and set the base offense level at 33. The advisory guideline range using § 2A2.1 was 210 months to 262 months. At the sentencing hearing, England presented evidence in an effort to persuade the district court that a shorter sentence was warranted. Ben England testified that he did not take his son's threats against Robert Bull seriously because his son was merely angry. He also testified that no one in his family fears his son. Robert Bull, the purported target of the threat, testified that England was merely "blowing off steam," and that he did not feel threatened by England. Nevertheless, the court sentenced England to 262 months, the upper limit of the advisory guideline range for attempted murder.

England appealed his conviction and his sentence. We affirmed England's conviction, but we vacated his sentence and remanded the case to the district court for resentencing.

In evaluating England's sentence, we examined the legislative history for 18 U.S.C. § 1512, and we found that

the absence of guideline § 2J1.2 from the statutory index was likely the result of a "fairly pernicious scrivener's error" that occurred when § 1512(a) was substantially amended in 2002 but the guidelines were not updated to reflect those statutory changes. *Id.* at 591-92. While England claimed his sentence was unreasonable, we did not find it necessary to reach the reasonableness of England's sentence. We stated that the record on appeal lacked any indication that the district court considered "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as required by § 3553(a)(6), and therefore the record was inadequate to evaluate the district court's use of its discretion. *Id.* at 590-92. We continued that a potential disparity might arise where a threat was sentenced at the same level as an attempted murder, and that this disparity could provide a basis for a variance. *Id.* We indicated that the district court should explain its view on the potential disparity as part of its § 3553(a) analysis, and we vacated and remanded for resentencing to give it a chance to do so. *Id.*

Following our decision, the United States Sentencing Commission proposed amendments to the guidelines to include, among other things, a "technical amendment" adding § 2J1.2 to the statutory index for convictions under § 1512(a). *See* Sentencing Guidelines for United States Courts, 73 Fed. Reg. 4931, 4936 (Jan. 28, 2008). On May 1, 2008, the Sentencing Commission sent the amendments to Congress to become effective on November 1, 2008. *See* Sentencing Guidelines for United States Courts, 73 Fed. Reg. 26924, 26936 (May 9, 2008). The Sentencing

Commission commented: "The amendment also adds a reference to § 2J1.2 (Obstruction of Justice) for a violation of 18 U.S.C. § 1512(a) to reflect the broad range of obstructive conduct, including the use of physical force against a witness, covered by the subsection." *Id.*

On June 2, 2008, the district court held the remanded sentencing hearing. Following argument by the parties, the court permitted England to allocute at length. England admitted his crimes of carrying a gun and obstruction of justice, and he acknowledged they were wrong. He also stated that he would not harm anyone once he was released from prison, nor would he carry a gun.

The district court then issued its sentencing decision. The court noted that the advisory guidelines range that it had applied previously was correct, although there might have been a scrivener's error in the guidelines, and that it was bound to apply the same advisory sentencing guidelines range used at the original hearing.

The court then considered the § 3553(a) factors to determine whether England should be sentenced within, above, or below the advisory guidelines range. The court stated it was considering all of the evidence and the arguments from the original sentencing hearing, including the PSR. In addition, the court noted that it would consider the Sentencing Commission's proposed amendment, which added § 2J1.2 to 18 U.S.C. § 1512(a) offenses in Appendix A of the statutory index.

As to the § 3553(a) factors, the court first considered the nature and circumstances of the offenses. The court found that they were aggravated, in that England not

only possessed the weapon in Count I, but he also threatened to use it against someone in anger. The circumstances of the offense were further aggravated, according to the district court, by England's obstructive conduct, which took place over a series of telephone calls from prison.

Turning to England's history and characteristics, the court described England as abusive, belligerent, and antisocial. The court accepted the findings of a forensic psychologist who concluded that England has an antisocial personality disorder that is chronic and pervasive. Based on this evidence, the court determined that England would remain confrontational. The court concluded England was "a person who can be dangerous, especially if he's angry," and a person willing to go "beyond mere threats." Additionally, the court noted that England committed the offenses of conviction while on probation, and it stated that he needed to be deterred from letting his anger get the best of him, for the protection of the public.

The court next addressed the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, pursuant to § 3553(a)(6). It acknowledged that while the advisory range was 210 to 262 months under § 2A2.1, it would be 92 to 115 months if § 2J1.2 had applied. The court stated that it was necessary to start with the correct guidelines and then make appropriate adjustments. It added that the parties had not submitted evidence of records of convicted defendants similarly

situated to England, complicating any § (a)(6) analysis. The court continued that the § (a)(6) considerations had to be balanced with all of the other § 3553(a) factors.

After completing its § 3553(a) analysis, the district court made several additional findings in resentencing England. The court found that England was "more in line with a person who might attempt to murder someone." The court continued:

> Now, I say that, that if the defendant had been out on bond right after the state charge, a felon in possession, and he was angry with either his family's testimony or he was angry with those four witnesses, I think he would have gone and done something at least to those four witnesses in order to try to persuade them not to testify against him, and I have no doubt that he would have taken a weapon, and that would have been a substantial step that's necessary for an attempt offense of murder. I think he would have gone to what degree of force that was necessary to get them to drop the charges against him. Threats, shooting, whatever. And, therefore, in this respect he is more like the attempted murderer than someone who's just one who's obstructing justice.

The sentencing court further found that England's statements that "he takes actions on his own" made him "one who more closely fits the type of person who would commit a murder," even though the court acknowledged that England always qualified these statements by saying he takes actions with words and not "by force." The court concluded "[t]herefore, the court in looking at

these [§ 3553(a)] factors, I've considered (a)(6) and find that he is closer to the attempted murder[er] than he is to the obstructive type of person . . . ." The court determined that a sentence within the advisory guidelines range of 210 to 262 months was reasonable and just. The court also found that even if the lower guidelines range under § 2J1.2 were applicable, the court would be inclined to vary England's sentence upward. Accordingly, the court sentenced England to a total sentence of imprisonment of 210 months, the low end of the advisory guidelines range under § 2A2.1.

## II. Analysis

England now appeals the 210-month sentence that the district court imposed on him at the June 2, 2008 resentencing hearing. He argues that the district court abused its discretion when it did not find an unwarranted disparity, based on § 3553(a)(6), resulting from imposing a sentence within the guideline range for attempted murder. He also claims that the district court's reasoning supporting the sentence—especially its finding that England "is closer to the attempted murder[er] than he is to the obstructive type of person"—was "grounded on pure conjecture" and was improper.

On remand, after hearing arguments from the parties and permitting the defendant to allocute, the district court considered the § 3553(a) factors, including § (a)(6), in detail. The district court's thorough analysis of the § 3553(a) factors was more than adequate. We agree with the court's statement that it could not conduct a

full § (a)(6) analysis because the parties had not sub-
mitted evidence of defendants with similar records who
had been found guilty of similar conduct. The court
detailed unique aspects of England's character and crimi-
nal history to support a relatively harsh sentence. Despite
England's contentions, the district court's § 3553(a) analy-
sis was proper and did not constitute an abuse of dis-
cretion.

After the district court carefully considered the § 3553(a)
factors, however, it stated that it would make its "find-
ings." In doing so, the court engaged in an additional
analysis concerning whether England—although con-
victed only for felon in possession and obstruction of
justice crimes—should be sentenced "like the attempted
murderer." The court envisioned what would have hap-
pened if England was not in prison for the felon in posses-
sion charge but rather was out on bond. The court under-
standably presumed that, at the time he was released,
England would have felt angry with his family members
or other witnesses because of their testimony. Then the
court stated that, in such a scenario, it "think[s] he
would have gone and done something." The court opined
that this "something" would have consisted of England
taking a weapon and seeking out his family members or
other witnesses, which would have been a "substantial
step that's necessary for an attempt offense of murder."
The court repeatedly expressed its belief that England is
"like the attempted murderer" and should be sentenced
as such.

We grant sentencing courts discretion to draw conclu-
sions about the testimony given and evidence intro-

duced at sentencing. *United States v. Hankton*, 432 F.3d 779, 786 n.14 (7th Cir. 2005) (citing *United States v. Sutton*, 406 F.3d 472, 474 (7th Cir. 2005)). Yet, this discretion is neither boundless nor is the information upon which a sentencing court may rely beyond due process limitations. To the contrary, we recognize that due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations. *United States v. Santiago*, 495 F.3d 820, 824 (7th Cir. 2007); *United States v. Noble*, 246 F.3d 946, 951 (7th Cir. 2001); *see also United States v. Berry*, Nos. 07-1251, 07-1276, ___ F.3d ___, 2009 WL 22890, at *8 (3d Cir. Jan. 6, 2009) ("A defendant cannot be deprived of liberty based upon mere speculation."). Indeed, the Supreme Court has long recognized that "[n]o individual or body of men has a discretionary or arbitrary power to commit any person to prison." *Hurtado v. California*, 110 U.S. 516, 537 (1884). If the district court relied on unreliable or inaccurate information in making its sentencing decision, we return the case to the district court for a new sentencing hearing. *See United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006); *United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984).

In this case, there is no doubt that the district court relied on its findings that England is akin to an attempted murderer in imposing its 210-month sentence. The court explicitly stated that "a just sentence is within the guideline range of 210 to 262 months" because of "the reasons that I've just stated," namely the comparisons of England to an attempted murderer.

The key inquiry posed by this appeal is if these findings by the district court were sufficiently "based on reliable evidence" to satisfy due process, or if they amount to speculation, albeit informed, that falls short of satisfying due process requirements. *See Santiago*, 495 F.3d at 824; *Noble*, 246 F.3d at 951. Evidence will satisfy the reliability requirement if it "bear[s] sufficient indicia of reliability to support [its] probable accuracy." *United States v. Cross*, 430 F.3d 406, 410 (7th Cir. 2005) (quoting *United States v. Lanterman*, 76 F.3d 158, 161 (7th Cir. 1996)). As a general matter, to satisfy this requirement, facts considered at sentencing must be proved by a preponderance of the evidence. *United States v. Watts*, 519 U.S. 148, 156 (1997) ("facts relevant to sentencing [should] be proved by a preponderance of the evidence [ ] and . . . application of the preponderance standard at sentencing generally satisfies due process."); *United States v. Schuster*, 948 F.2d 313, 315 (7th Cir. 1991) (stating that due process does not require that the facts on which a sentence is based be correct beyond a reasonable doubt but only by a preponderance of the evidence). The preponderance of the evidence standard satisfies due process in a case, such as this one, where the district court sentences a defendant based on the guideline for a crime the court believes the defendant would have committed if out of prison on bond. Simply put, the question here is whether a preponderance of the evidence supports the court's *belief* that the defendant *would have* committed the crime. Adhering to such a standard operates to preclude a sentencing court from sentencing defendants for crimes not sufficiently supported by reliable evidence.

Turning to this case, we are unable to conclude that a preponderance of the evidence buttresses the court's belief that England would have attempted murder. We find an insufficient quantum of evidence to support the court's assumption that England, if out on bond, would have (a) possessed the criminal intent to kill, and (b) performed an act constituting a substantial step toward the commission of murder, as required to prove the crime of attempted murder in Illinois. *See People v. Brown*, 793 N.E.2d 75, 80 (Ill. App. 2003). While recognizing that the district court cited England's criminal history and personal characteristics as evidence that he would act on his threats, it appears as likely that a factfinder could conclude that England, if out on bond, would not so act. England's family members, including his brother-in-law Robert Bull, testified that they did not feel threatened by England's statements. Bull and other family members believed that England was merely "blowing off steam" in issuing threats. Hence, because the evidence appears at least in equipoise, the preponderance standard is not met.

The court's statement that, even if the lower guidelines range under § 2J1.2 were applicable, the court would be inclined to vary England's sentence upward does not alleviate the need to meet the preponderance standard. The court was still referring to its finding that England should be sentenced like an attempted murderer. In any event, the court did not specify how far upward it would depart. Therefore, we respectfully—and with a degree of reluctance considering the district court's diligence in attempting to arrive at the correct disposition in this matter—vacate England's sentence and remand to the district court for resentencing.

In arriving at our decision, we want to underscore that we do not pass judgment on the reasonableness of the 210-month sentence imposed by the district court. As noted above, the able and experienced district court judge conducted a thorough and meaningful § 3553(a) analysis and the sentence that he imposed very well may be reasonable. The district court need not repeat this analysis at resentencing; it can adopt the § 3553(a) findings arrived at during the June 2, 2008 hearing. We only require that the district court make its sentencing determination without reliance on a finding that England would have attempted murder if out on bond unless further evidence is adduced which would justify such a conclusion.

### III.  Conclusion

We VACATE England's sentence and REMAND for resentencing.