In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1080

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PAUL R. BRADLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 09-40068-001-JPG—**J. Phil Gilbert,** *Judge.*

ARGUED OCTOBER 5, 2010—DECIDED DECEMBER 13, 2010

Before BAUER, WILLIAMS, and TINDER, *Circuit Judges*.

PER CURIAM. Paul Bradley pleaded guilty to traveling in interstate commerce to engage in sexual conduct with a minor. *See* 18 U.S.C. § 2423(b). The district court calculated a guidelines imprisonment range of 57 to 71 months, but sentenced him to 240 months. On appeal Bradley principally argues that his sentence rests on speculation about his prior criminal conduct and likelihood of recidivism, and thus is unreasonable. We

agree and vacate the judgment and remand for resentencing.

## I. BACKGROUND

The police arrested Bradley after spotting his car parked on the side of the road shortly after midnight and finding him with T.S., a 15-year-old boy. Bradley, who is from Oregon, initially told the police that he was lost and had stopped T.S. to ask for directions, but later he admitted meeting T.S. through a phone chat (the equivalent of an Internet chatroom conducted over the telephone). Bradley eventually learned that T.S. was younger than 18 but still traveled to Illinois to meet him.

According to the probation officer, T.S. provided conflicting information during his several interviews. T.S. asserted that he had been talking on MySpace with "Alice Bradley," whom he thought was a 16-year-old girl. He told the probation officer that he and Alice first started talking the month before the defendant's arrest, but later he reported in his victim-impact statement that he and Alice had been communicating for six months. According to T.S. they had arranged to meet in Illinois (T.S. did not say where he thought Alice was from), but on the appointed night Bradley showed up instead and said that Alice was waiting at a motel. At first T.S. maintained that he never went to the motel, but later he said that he was there with Bradley for one night only and that Bradley had threatened to kill him if he did not do as he was told. That statement is at least partly false, since security cameras at the motel recorded

images of Bradley and T.S. the night they were discovered in the car, as well as the previous night. In his last interview, T.S. added that Bradley had plied him with alcohol before forcibly sodomizing him. The prosecutor would later concede that this account of a forcible rape was undermined by DNA confirmation that semen found on a motel blanket was from T.S., who had denied engaging in any other sexual activity. T.S. underwent a medical examination after the offense, but the results were not disclosed by the probation officer.

T.S. told the probation officer that after his encounter with Bradley he started drinking heavily in order to feel numb and help him sleep. He also said that he no longer felt comfortable around his father. T.S.'s mother explained that his father had told T.S. that "he got what he deserved, if he was going to do something like that." She related that T.S. had suffered harassment at school, including a fight that resulted in a broken nose. She also expressed worry about T.S.'s present and future sexual behavior and the safety of her younger son when around him. T.S. attended two sessions of counseling, but his deteriorating behavior at school resulted in suspension and then placement in an alternative school. In his victim-impact statement, he described a recurring nightmare about waking up paralyzed, expressed feeling shame when interacting with peers, and recounted the embarrassment and pain of getting tested after the offense. T.S. also said he had suffered "a great deal of public humiliation" when a local paper printed details about the incident, including his name and picture. That article is not sympathetic to T.S.; it

discloses that he misrepresented himself as an 18-year-old on MySpace and implies that he was a willing participant in his dealings with Bradley.

Motel records confirmed that Bradley had booked a room for one adult and one child for both the night he was arrested and the previous night. A search of Bradley's computer (presumably one he brought with him to Illinois) uncovered evidence of two "child pornography" images, one of them deleted, as well as what the probation officer described as two "sex-encounter stories" about teenage boys (Bradley's appellate counsel describes these as "teenage boy coming of age stories"). According to the probation officer, the computer also contained several hundred images of "adult pornography," "adult homosexual pornography," and "adult males in lewd poses."

Bradley initially was charged in state court, but he told the probation officer that he had asked his lawyer to contact federal authorities and initiate this prosecution because he thought the state charges were inaccurate, he wanted the case resolved quickly, and he wanted to be incarcerated in a federal prison in California, near his family. (After Bradley's federal sentencing he pleaded guilty in state court to aggravated criminal sexual abuse. Eight other state charges, including child abduction, unlawful restraint, and aggravated kidnapping, were dismissed.) In a stipulated factual basis offered in support of his guilty plea to the § 2423(b) count, Bradley admitted traveling from Oregon to Illinois for the purpose of engaging in sexual conduct with a person

he knew to be 15 years old and using his computer to persuade the juvenile to engage in the sexual conduct.

In Bradley's presentence report, the probation officer did not identify any adult or juvenile convictions, or even prior arrests, and thus assessed no criminal history points. The probation officer calculated Bradley's total offense level at 25 with a criminal history category of I, yielding a guidelines imprisonment range of 57 to 71 months. Under U.S.S.G. § 2G1.3(a)(4), his base offense level was 24, but two levels were added for unduly influencing a minor, *id.* § 2G1.3(b)(2)(B), two more levels were added for the commission of a sex act, *id.* § 2G1.3(b)(4)(A), and three levels were subtracted for acceptance of responsibility, *id.* § 3E1.1(a), (b). The probation officer did not identify any factor that would warrant a sentence above the guidelines range. The district court adopted the proposed findings without objection from the parties.

At sentencing the government requested an above-range sentence of 87 months. The prosecutor argued that a sentence within the range would not adequately reflect T.S.'s suffering—his removal from school and his picture being printed in a local newspaper—and suggested an increase equivalent to a two-level upward adjustment for a vulnerable victim, *see* U.S.S.G. § 3A1.1(b). The prosecutor, who had not met with T.S., acknowledged that some of his distress might relate to difficulties surrounding the disclosure of his sexual identity. The prosecutor also commented that he finds it difficult to accept that convictions for possessing

child pornography often result in a higher imprison-
ment range than convictions for crimes, like Bradley's,
that actually involve sexual contact with a minor.

Defense counsel, on the other hand, pressed the
district court to impose a 60-month sentence, high-
lighting Bradley's cooperation with the federal inves-
tigation, his lack of criminal history, and the fact that
T.S. had suffered no physical injury. Defense counsel
conveyed regret about the newspaper's identification
of T.S., but maintained that Bradley should not be pun-
ished for the paper's actions. Defense counsel insisted
that Bradley's actions were out of character, and he
reminded the court that until his arrest Bradley had
earned an education and worked his entire life, had
been married for nearly 32 years, was an active father
to four daughters, and volunteered at his church.

During his allocution, Bradley told the district court
that he met T.S. in a phone sex chatline for adult men,
at which time T.S. had said he was an 18-year-old
high school senior. Bradley's assertion that he initially
thought T.S. was 18 is consistent with the newspaper
report that T.S. was misrepresenting his age on MySpace
as 18. Bradley maintained that he was upfront with
T.S. about his own age and said he began questioning
whether T.S. was 18 after seeing his picture on "Facebook"
and receiving nude pictures from T.S. (This photo of
T.S. may be the "child pornography image" found on
Bradley's computer, but the record is not conclusive,
and apparently the lawyers for neither side looked at
the image.) Bradley admitted knowing that T.S. was

underage by the time they met in Illinois, but he insisted that he never deceived T.S. about his intentions, or intimidated him, or used or threatened violence. Bradley expressed remorse and assured the court that he had "never done anything like this before" and would "never do anything like it again." The court interrupted him, asking if T.S. was "the first," to which Bradley responded: "The first underage? Yes." Bradley concluded by vowing never again to use a social-networking site or phone chat or do anything to undermine his chances of reconnecting with his daughters or society in general.

The district court, unpersuaded by Bradley's words, characterized him as "Dr. Jekyll and Mr. Hyde" and a child predator and told him:

> But in truth in fact, Mr. Bradley, you are a pathetic person. I can't think of a more calculated and heinous crime upon children than this one. The only thing worse you could have done to this child was to have killed him. But wait a second. You did kill him. You killed his spirit, his self-esteem, his confidence in himself, his security, and his ability to cope with life. You have killed the person he was, for the victim here, T.S., will never be the same. And he will likely go through the rest of his life in living hell because of you.

The court, having read a letter from Bradley's 78-year-old mother in which she quotes *The Merchant of Venice* in asking the court to temper justice with mercy, responded by paraphrasing its favorite philosopher, the *Peanuts* character Snoopy, and telling Bradley: "'You are the

crabgrass on the lawn of life.' And you know something, Mr. Bradley? You are lucky that you are living in this country and not in one of the middle eastern countries where you would be executed for this crime." The court asserted that the imprisonment range was "so inadequate under the facts of this case that to even consider a guideline sentence would be a travesty of justice," and instead, the court continued, the "facts of this case present the exceptional circumstances that call for a sentence near the top of the statutory range" of 30 years. "In fact," the court told Bradley, "I've given life sentences to people who deserved it less than the sentence I'm going to be giving you."

The court stated that the only factor under 18 U.S.C. § 3553(a) weighing in Bradley's favor was his status as a first-time defendant in a criminal prosecution. But the court rejected Bradley's assertion that he had never before engaged in sex with a minor:

> This doesn't mean, however, that you haven't committed other crimes. It doesn't mean that you've lived a law-abiding life. It just means you haven't been caught and charged with other crimes. Even paragraph 10 of your presentence report states that your computer had child pornography images as well as other images of pornography on it. I can't help but to wonder how many other T.S.'s of yours are out there. You, obviously, operated your criminal activity under the radar.

The court then analyzed the other § 3553(a) factors:

> Factor one of 3553(a) asks this Court to consider the nature and circumstances of the offense, and that

is something I don't think I need to repeat. For as I said earlier, this was a heinous crime committed against a victim here that will have a life-long lasting impact on his family, too. Even the history and characteristics go against you when you consider what was found on your computer.

Factor two, the need for the sentence imposed, A, to reflect the seriousness of the offense, to promote respect for the law, and to promote just punishment for the offense. Other than possibly a terrorist attack, I can't think of a more serious offense than what was committed here, a crime against our children. And whether or not, you know, he willingly, in your mind, engaged in sexual conduct with you, the fact is he was 15 years old and you knew better. You should have walked away, but you didn't. And you're going to pay the price for not walking away.

But to promote respect for the law and to provide just punishment, a stiff sentence is necessary. To afford adequate deterrence to criminal conduct, this factor cries out for an above-guidelines sentence in order to send a message to other pedophiles and perverts this society will not tolerate this conduct.

Regarding the need to protect the public, the court stated, "There is little question in my mind that the public and society needs to be protected from Paul Bradley for a long time, and that if released too soon, the Court believes you would reengage in the same activity that you are charged with here." The court then told Bradley:

I am not a medical doctor, but you have to be a sick individual to have done what you did. I don't know whether educational or medical treatment will help you, but it's obvious you need treatment, both educational and medical if you are ever going to be able to live a law-abiding life once released. And considering the nature of this offense, that treatment may take a long time.

The court concluded by sentencing Bradley to 240 months' imprisonment, 169 months above the high end of the guidelines range.

## II. ANALYSIS

Bradley argues that the district court violated his right to due process by speculating that he had committed this type of crime before and would do it again if released too soon. Bradley also argues that the court overstepped by equating T.S.'s suffering to death, and erroneously attributed his emotional distress to Bradley's crime rather than being outted to his family and classmates. At oral argument, the government conceded that no evidence in the record directly supports the court's assumptions about Bradley's past and his risk of recidivism. But still, says the government, the court adequately justified its beliefs about Bradley by referencing the child pornography and stories of sexual encounters involving teenage boys found on his computer and choosing to disbelieve Bradley's declaration that his encounter with T.S. was his first with a child. The government also argues that the court appro-

priately concluded that T.S.'s trauma resulted from the offense. And in any event, the government insists, Bradley forfeited these objections to his sentence because he did not raise them to the district court.

The government's forfeiture argument fails, as we have made clear that a defendant need not "complain about a judicial choice after it has been made." *United States v. Bartlett*, 567 F.3d 901, 910 (7th Cir. 2009), *cert. denied*, 130 S. Ct. 1137 (2010); *see United States v. Paul*, 542 F.3d 596, 599 (7th Cir. 2008); *United States v. Cunningham*, 429 F.3d 673, 679-80 (7th Cir. 2005). As for Bradley's complaint that the district court overstated T.S.'s suffering, the only evidence of T.S.'s distress comes from his own shifting accounts given to the probation officer. No reports from T.S.'s counseling sessions or from any physician or psychologist were presented. The government points out that "negative emotional consequences" naturally result from this type of offense, and surely this is true. But the question here is one of degree, and nothing in the record suggests consequences of the magnitude the district court described.

In our view, however, the greater concern is the absence of support for the district court's assumptions that Bradley had committed undiscovered crimes and thus was likely to commit more if released. Bradley rightly questions the propriety of the court's disparaging comments, particularly the glib response to his mother's plea for mercy. We recently observed that a "litany of inflammatory remarks" can undermine the entire analysis of a sentencing judge. *United States v.*

*Figueroa*, 622 F.3d 739, 743-44 (7th Cir. 2010); *see United States v. Lopez*, 974 F.2d 50, 52 (7th Cir. 1992); *United States v. Schneider*, 910 F.2d 1569, 1571 (7th Cir. 1990). Here, the court's unnecessarily harsh and exaggerated language by itself gives us pause, but when we also consider the speculation underlying the court's reasons for the extreme variance from the guidelines range, we simply cannot conclude that the court imposed a reasonable sentence.

Appellate courts review the reasonableness of sentences for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We must first ensure that the sentencing court made "no significant procedural error," including "selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* A defendant has a due process right to be sentenced based on accurate information, and the threshold for accuracy is whether the information has "sufficient indicia of reliability to support its probable accuracy." *United States v. Pulley*, 601 F.3d 660, 665 (7th Cir. 2010). Sentencing judges necessarily have "discretion to draw conclusions about the testimony given and evidence introduced at sentencing," but "due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009), *cert. denied,* 2010 WL 3153546 (2010); *see United States v. Mays*, 593 F.3d 603, 608 (7th Cir. 2010), *cert. denied*, 130 S. Ct. 3340 (2010); *Pulley*, 601 F.3d at 665; *United States v. Rollins*; 544 F.3d 820, 838 (7th Cir. 2008); *United States v. Barker*, 467 F.3d 625, 629-30 (7th

Cir. 2006); *United States v. Jones*, 454 F.3d 642, 652 (7th Cir. 2006).

A conclusion is more likely to be sustainable if the underlying analysis is "sufficiently particularized to the individual circumstances of the case rather than factors common to offenders with like crimes." *United States v. Miller*, 601 F.3d 734, 739 (7th Cir. 2010). For example, we affirmed an above-guidelines sentence when the district court detailed ten specific reasons supporting its conclusion that the defendant posed a particular risk for recidivism. *United States v. Jordan*, 435 F.3d 693, 697 (7th Cir. 2006). On the other hand, we recently remanded for resentencing where the district court relied upon its unsupported beliefs about recidivism rates for child sex offenders as a reason to sentence the defendant above the guidelines. *Miller*, 601 F.3d at 740. The defendant in *Miller* was a 33-year-old female who, like Bradley, had no criminal record. *Id.* at 735-36. She pleaded guilty to traveling in interstate commerce to engage in prohibited sexual activity with a 14-year-old she met online. *Id*. Miller's imprisonment range was 70 to 87 months, but the court sentenced her to 120 months based, at least in part, on an unsubstantiated belief that recidivism rates for child sex offenders are "massive" and that treatment options are bleak. *Id.* at 739. Neither the government nor the court had identified any supporting evidence about recidivism, either in general or about Miller in particular, though the government presented a photo album cataloging Miller's previous relationship with another young teenage girl. *Id*. at 736, 739. On appeal we were troubled that the

district court's statements, even if true, applied to all sex offenders and were not specific to Miller. *Id.* at 739. Miller provided us with studies indicating lower recidivism rates for females and the availability of effective sex-offender treatment. *Id.* at 739-40. After considering these studies and the dearth of evidence specific to Miller's recidivism in the record, we concluded that the district court's beliefs were, at best, subject to debate and therefore inadequate to justify the above-guidelines sentence. *Id.* at 740.

Bradley argues that the district court, as in *Miller*, improperly speculated that he would recidivate. The government counters that in this case the district court made an individualized determination based upon "specific evidence" that Bradley needed a lengthy sentence to prevent him from committing the same crime again. But that contention is not supported by the record. In fact the district court went further out on the limb than the judge did in *Miller*: instead of making a questionable prediction about future behavior based on a single episode of deviant conduct, the judge in this case made a prediction about future conduct based on rank speculation about other, multiple instances of deviant behavior. Indeed, in *Miller* the defendant's photo album confirmed the existence of a prior underage victim, but no similar evidence is present here. Moreover, any individualized determination appears limited to the court considering Bradley's possession of child pornography, lack of criminal history, and assertion that he had never done this before and concluding that he was a below-the-radar pedophile who would recidivate.

Possession of child pornography is a separate offense that the court properly considered, *Mays*, 593 F.3d at 609-10, but it is unclear how the court connected the possession of child pornography with the conclusion that Bradley had committed this crime before and would commit it again.

This conclusion suffers from the same defect as in *Miller*—the district court relied on its unsubstantiated belief that possessors of child pornography inevitably are child sex offenders. Such speculation cannot survive due process challenge. *See United States v. Newman*, 614 F.3d 1232, 1238-39 (11th Cir. 2010) (remanding when sentencing court concluded without support in record that defendant brought his son to Middle East because it would be difficult for anyone to find him there); *England*, 555 F.3d at 623 (remanding when preponderance of evidence failed to support district court's finding that defendant would have attempted murder had he been out on bond). The government argues that, despite the speculation, the district court still imposed a reasonable sentence and provided an adequate explanation by discussing the sentencing factors listed in 18 U.S.C. § 3553(a). But the evaluation of those factors was flawed from the inception because the court's assessment of the very first factor—the nature and circumstances of the offense and Bradley's history and characteristics, *see id.* § 3553(a)(1)—rests on speculation rather than evidence bearing "sufficient indicia of reliability." *Pulley*, 601 F.3d at 665. And this skewed view of the first factor necessarily colored the court's view of the remaining § 3553(a) factors. Because

the district court based Bradley's sentence on its speculation about past crimes and his potential for recidivism, we vacate Bradley's sentence and remand for resentencing.

On a final note, Bradley also argues that the district court did not explicitly adopt a version of the disputed facts surrounding the offense. The government responds that the court adopted the findings in the presentence report. Yet material factual discrepancies abound in the presentence report. The bottom line is the same—Bradley engaged in illegal sexual conduct—but the journey there remains largely up to debate, as Bradley's and T.S.'s accounts are wholly incompatible. The district court, then, as a first step to considering the appropriate sentence, will need to resolve these disputed issues of fact. *See* FED. R. CRIM. P. 32(i)(3)(B); *United States v. Dean*, 414 F.3d 725, 727 (7th Cir. 2005).

### III.  CONCLUSION

Bradley's sentence is VACATED, and this case is REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall apply on remand.