> **NONPRECEDENTIAL DISPOSITION**
> To be cited only in accordance with
> Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 15, 2011
Decided August 24, 2011

**Before**

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 11-1360

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> *Plaintiff-Appellee*, | Appeal from the United States District Court <br> for the Central District of Illinois. |
| *v.* | No. 02-30067-001 |
| LARRY E. NICHOLS, <br> *Defendant-Appellant*. | Richard Mills, <br> *Judge*. |

## O R D E R

Larry Nichols appeals the 12-month term of reimprisonment he received for violating the conditions of his supervised release. He argues that the district court violated his right to due process by relying on an allegedly inaccurate assessment of the severity of his prior sentences. We affirm.

In 2002 Nichols pleaded guilty to bank robbery. *See* 18 U.S.C. § 2113(a). The district court imposed a sentence at the low end of the guidelines range—33 months' imprisonment and 3 years' supervised release—and ordered that the period of incarceration be served concurrent to a state prison sentence that Nichols received for committing six additional robberies. He was released from prison in 2007 and by 2008 had violated the terms of his supervised release: he tested positive for cocaine and marijuana use and committed two state felonies by falsely promising to provide home repairs to elderly homeowners. For the

latter violations, an Illinois court sentenced Nichols to more than six years in prison for financially exploiting the elderly. *See* 720 ILCS 5/16-1.3(a). While Nichols was in state custody, his federal probation officer petitioned to revoke his supervised release. When Nichols completed his state prison terms in 2010 (he served less than three years in state custody), state officials turned him over to federal authorities.

At the revocation hearing Nichols conceded that the guidelines imprisonment range was 6 to 12 months based on the severity of his supervised-release violations (Grade B) and his original criminal-history category (II). *See* U.S.S.G. § 7B1.4(a). Nichols nonetheless urged the district court to impose a term of reimprisonment of two months, emphasizing, among other things, that he had already served significant time in prison on the exploitation offenses, was subject to state parole, and was denied the opportunity to have his federal reimprisonment run concurrent to his state sentences. He also contended that there was little information in the record about his state felonies besides the ages of the victims and the amounts he stole from them. For its part, the government recommended a 12-month term of reimprisonment, stressing the seriousness of Nichols's conduct and remarking that his original sentence seemed "not very long" for a bank robbery (though the prosecutor acknowledged that Nichols's limited criminal history at the time was "one of the primary reasons for that").

The district court revoked Nichols's supervised release and imposed a 12-month prison term. The court commented that Nichols had "not been dealt with harshly at all" in the past because his prior sentences "proved to be a very lenient treatment." The court continued: "You got out with a lot less time than most defendants would have. Everything has seemed to fall into place for you. And it's amazing how you pigeonhole each one of these things and you came out smelling like roses." Nichols "had a pretty good darn deal so far" and had "lucked out," the court added. Although he hadn't physically hurt anyone, the court noted, Nichols had quickly returned to his old ways after his release from prison by taking his elderly victims "to the cleaners." Finally, the court warned Nichols that further crimes might land him in jail for "one heck of a long time."

Nichols now argues that the district court committed reversible error in relying on what he describes as inaccurate "factual findings" about the severity of his past sentences. He does not contest the reasonableness of his term of reimprisonment, but instead insists that there is no reliable information in the record to support the court's opinion that he had received leniency.

Nichols's argument is unpersuasive. Although he characterizes the district court's comments on the severity of his past sentences as factual findings, they are better understood—as the government suggests—as the court's subjective assessment that his prior sentences were too lenient to deter him from further crime. District courts have discretion to

draw this type of assessment, as long as it is based on reliable evidence, not speculation. *See United States v. Bradley*, 628 F.3d 394, 399-400 (7th Cir. 2010); *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009), *cert. denied*, 131 S. Ct. 346 (2010). The court here had no need for speculation; Nichols's history is uncontested. He received a federal prison sentence at the bottom of the guidelines range for his bank robbery, served that sentence concurrently with a state prison term for multiple other robberies, committed two state felonies (and used illegal drugs) little more than a year after being released on supervised release, and served less than three years in state custody on those felonies. The court, therefore, in no way overstepped its bounds in concluding that Nichols had received leniency.

AFFIRMED.