NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued April 29, 2014
Decided May14, 2014

**Before**

WILLIAM J. BAUER, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

No. 13-3739

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 3:13-cr-30066-DRH-1 |
| | |
| THOMAS L. STANTON, | David R. Herndon, |
| *Defendant-Appellant.* | *Chief Judge.* |

**O R D E R**

Thomas Stanton appeals his 30-month sentence for possessing unregistered destructive devices, 26 U.S.C. § 5861(d). He insists that his within-guidelines prison term is excessive because, he asserts, the district court erroneously concluded that he intended to commit harm with the devices. But the court's finding is supported by evidence introduced at sentencing by the government, plus the court adequately considered the factors in 18 U.S.C. § 3553(a) and explained its reasons for imposing the sentence. We thus affirm Stanton's sentence.

In March 2013 authorities received an anonymous letter warning that Stanton (who was 18 years old at the time) was building bombs at his house in Lebanon, Illinois.

The following month authorities searched the house and discovered various bomb-making materials. Stanton was charged with violating § 5861(d), and he pleaded guilty in August 2013.

At the sentencing hearing in December 2013, the district court calculated a total offense level of 19, which includes upward adjustments of 2 levels because the offense involved a destructive device, *see* U.S.S.G. § 2K2.1(b)(3)(B), and 2 more levels because the number of devices was at least 3 but fewer than 8, *see id*. § 2K2.1(b)(1)(A), less 3 levels for accepting responsibility, *see id*. § 3E1.1. After taking into account Stanton's criminal history category of I, the district court calculated an imprisonment range of 30 to 37 months.

In advocating a within-guidelines sentence, the government called an FBI agent to testify at sentencing about the anonymous letter and the items discovered at Stanton's house. The letter, sent by a resident of Lebanon, describes Stanton as a "mentally disturbed teenager" who had "booby-trapped" his bedroom, and flaunted "hand grenade" type objects on his front lawn. The writer asked police to intervene to "prevent a potential violent crime" like the shooting in Newtown, Connecticut.

According to the agent, authorities searched Stanton's home with his father's permission while Stanton was at school. The agent testified that authorities had found in Stanton's bedroom instructions on utilizing nails in making explosive devices plus, in the basement, a number of rusty nails. The search also had unearthed documents that discussed "Specific Ideas of Where and How to Hide Things From Your Parents" and "The Ten Commandments of Revenge." Another document lists essential items for an "anarchy bag," including bombs made from empty $CO_2$ cartridges.

Authorities discovered in Stanton's house several notebooks filled with sketches and handwritten notes. Although Stanton did not tell investigators that he wrote what is in the notebooks, his attorney conceded the point. Writings in one notebook explain how to "send a car to hell" using "$CO_2$ bombs" and gasoline-soaked rags stuffed into the exhaust pipe. That same notebook includes instructions on making "mailbox bombs," exploding light bulbs, fertilizer bombs, Molotov cocktails, napalm, bottle bombs, "nail grenades," and "tennis ball bombs." Many of these handwritten instructions include pointers on maximizing the shrapnel and other means of harming people with homemade bombs. Authorities also discovered a handgun and ammunition in the basement, a large machete in Stanton's bedroom, and elsewhere in

the house, empty $CO_2$ cartridges, gunpowder, fuses, metal shavings, and two Molotov cocktails.

According to the FBI agent, another of Stanton's notebooks, which is titled "Death Attack," includes this handwritten note: "You stabbed me in the back, wearing my dog like a pelt. I didn't want to say this but I'm going to kill you anyway." In a third notebook Stanton had sketched swastikas and written homophobic, anti-Semitic, and other hateful language.

In the presentence investigation report, the probation officer recounts the events after Stanton's house was searched. The authorities placed Stanton's high school on lockdown after discovering the explosive devices at his house but found nothing more on campus. Stanton was transported to the police station, and during an interview he described himself as a "mad man." Stanton admitted making $CO_2$ bombs, napalm, and Molotov cocktails and detonating the explosive devices outside his house. He also conceded interacting with white supremacist organizations from age 15 until he was 18. Six of Stanton's classmates confirmed that he had made bombs, sometimes in ways intended to increase the shrapnel. They noted Stanton's dislike for minority groups but opined that he had not intended to hurt anyone. Stanton's father reported to authorities that his son and his friends often played video games, shot firearms, and dismantled ammunition to make bombs. Stanton's former step-mother told authorities that he had gotten "out of control with his racist beliefs" after meeting a former member of a white supremacist organization.

The probation officer also related that, according to a classmate, Stanton had warned repeatedly in the fall of 2012 that he "would kill O'Fallon High School students." Although Stanton never disclosed a specific plan, he had bragged that his part-time job as a school janitor gave him access to the school's ventilation system and roof. The student had reported Stanton's statements to the school counselor.

After defense counsel had conceded the accuracy of the presentence report and the government had highlighted the items discovered at Stanton's house, the government argued for a prison sentence of 33 months. Although Stanton had not harmed anyone, the prosecutor asserted that his intent to do so was evident from the record. Stanton's attorney countered that the defendant should be sentenced to time served plus supervised release or probation. The lawyer disputed that Stanton had intended harm and claimed instead that the defendant had become obsessed with the fantasy warfare video games he played with his friends and had tried to replicate devices seen in those games. And though acknowledging Stanton's description of

himself as a "mad man," his attorney opined that Stanton had meant he was "intensely enthusiastic about his interests and hobbies." Stanton's attorney also asserted that the notebook containing racial epithets was four years old, and that, "because of his stage of life," the defendant's "ability to make good decisions was not fully developed when he committed his offense, although his ability will improve with age." His attorney insisted that Stanton does not exhibit the typical personality traits associated with criminal behavior; he enjoyed a stable relationship with his father, worked two part-time jobs, and planned to marry his girlfriend, who recently had given birth to their child. But nothing the lawyer said to explain Stanton's bomb-making activities is supported by evidence, not even testimony from the defendant. Stanton did speak at sentencing and said he regretted his actions, but he did not offer a motive or corroborate anything his lawyer had said in his sentencing memorandum or in court.

Before announcing Stanton's sentence the district court discussed the nature and circumstances of the offense. The judge highlighted evidence that Stanton possessed instructions for making destructive devices and using them against people, harbored hatred for minority groups, and had unrestricted access to his high school through his janitorial position. That evidence, the court reasoned, allowed a reasonable inference that Stanton "planned to do something destructive with these materials rather than simply blowing them up to watch them." The district court concluded that Stanton had intended to cause harm with the destructive devices and sentenced him to 30 months' imprisonment and 3 years of supervised release with a special condition mandating mental-health treatment.

On appeal Stanton first contends that the district court committed clear error in finding that he intended to commit harm with his homemade devices. Stanton asserts that the only reasonable inference from the entirety of the evidence is that he possessed the destructive devices for recreational purposes. The district court's conclusion rests on speculation, Stanton insists, because his father and former step-mother had told authorities that he and his friends regularly played video games and participated in military-style exercises, and his friends had opined that Stanton did not intend harm.

But district courts have "'discretion to draw conclusions about the testimony given and evidence introduced at sentencing,'" *United States v. Halliday*, 672 F.3d 462, 475 (7th Cir. 2012) (quoting *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010)), and we reverse only if we are "left with the definite and firm conviction that a mistake has been made," *United States v. White*, 737 F.3d 1121, 1142 (7th Cir. 2013) (internal citation and quotation marks omitted); *United States v. Cruz-Rea*, 626 F.3d 929, 938 (7th

Cir. 2010). The government presented sufficient evidence at sentencing to support the district court's conclusion that Stanton intended harm. Although authorities did not uncover a specific plot to harm others, Stanton's notebooks describe how to use the destructive devices against individuals. In one notebook Stanton explains how to build a bomb with a tennis ball and adds, "[W]hen you see a geek walking down the street, give it a good throw, he will have a blast." In that same notebook Stanton explains how to fill a light bulb with napalm and recommends inserting it "into a socket frequently used by the victim" so that when he "flips the switch, he will be in for a big surprise." None of this sounds "recreational," and yet Stanton did not testify at sentencing or offer any other evidence concerning his motivation for making destructive devices or his handwritten ideas for what to do with those devices.

Stanton's notebooks reflect that he harbored hatred toward several minority groups. He not only referred to these groups in derogatory terms but also wrote about causing them harm. And though Stanton's attorney insisted in the district court, and repeats to us, that Stanton's hateful thoughts of hurting minorities had been written several years earlier, Stanton himself did not back up his lawyer's claim about the age of his disparaging writings. Again, what is missing is *evidence*. *See United States v. Vidal*, 705 F.3d 742, 744 (7th Cir. 2013) (explaining that sentencing courts need not respond to arguments in mitigation which lack factual basis); *United States v. Chapman*, 694 F.3d 908, 914 (7th Cir. 2012) (explaining that attorney's representations are not evidence); *United States v. Diaz*, 533 F.3d 574, 578 (7th Cir. 2008) (same). Moreover, counsel sidestepped that Stanton kept the notebook, which undercut the lawyer's implication that the defendant had matured and moved beyond his offensive beliefs. Indeed, Stanton's former step-mother confirmed that he was "out of control with his racist beliefs," and Stanton himself admitted that he still was interacting with white supremacist organizations at 18 (his age at the time of his arrest).

Stanton also contends that no matter what he intended to do with his destructive devices, his 30-month prison term exceeds what's necessary to serve the sentencing goals under § 3553(a). But this within-guidelines sentence is presumed reasonable, *see United States v. Cheek*, 740 F.3d 440, 455 (7th Cir. 2014); *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010), and the district court adequately connected the sentence to the § 3553(a) factors. The district judge noted the serious nature of Stanton's offense, *see* 18 U.S.C. § 3553(a)(1), and concluded that the defendant intended to use his homemade bombs to inflict harm. Discussing the need to protect the public, *see id.* § 3553(a)(2)©, the district judge stated, "I simply can't in good conscience leave this

young man on the street at this point." And the judge noted that 30 months was appropriate to send a "loud and clear message" to Stanton so that he could "understand the seriousness of all of his actions." *See id*. § 3553(a)(2)(A), (B).

AFFIRMED.