In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2087

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ALEXANDER KLUBALL,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 15-cr-124 — **James D. Peterson**, *Judge.*

ARGUED NOVEMBER 7, 2016 — DECIDED DECEMBER 13, 2016

Before EASTERBROOK and WILLIAMS, *Circuit Judges*, and FEINERMAN, *District Judge.**

FEINERMAN, *District Judge.* Alexander Kluball was sentenced to 120 months' imprisonment for transporting a 17-year-old girl across state lines with the intent that she engage in prostitution, in violation of 18 U.S.C. § 2421. The only issue

---

* Of the Northern District of Illinois, sitting by designation.

on appeal is whether the district court violated Kluball's due process right to be sentenced based on accurate information by finding that his mental health history suggested that further treatment would be unlikely to have a "lasting impact" on his ability to refrain from further criminal conduct. There was no due process violation, and so the district court's judgment is affirmed.

In pleading guilty, Kluball admitted that he drove to Tennessee to pick up a 17-year-old girl he had met on Facebook, brought her to his apartment in Wisconsin, advertised her online for sex acts, and escorted her to several prostitution engagements in the Madison area. The probation office calculated an advisory guidelines range of 121 to 151 months' imprisonment, but because the statutory maximum under § 2421 is ten years, Kluball's advisory guidelines term became 120 months. See U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

The presentence investigation report provided the only factual information before the district court regarding Kluball's mental health history. The report chronicled Kluball's struggle with mental illness and associated behavioral problems since early childhood. His diagnoses included oppositional defiant disorder, attention deficit hyperactivity disorder, bipolar disorder, posttraumatic stress disorder, and depression. Kluball received counseling and was hospitalized several times, and he was treated with an array of drugs, including Adderall, Depakote, Eskalith, Fluoxetine, lithium, Prozac, Remeron, Ritalin, Seroquel, Strattera, Valium, Zoloft, Zydis, and Zyprexa. None of the treatments succeeded, at

least for very long. Kluball was kicked out of twenty-one day-care facilities as a child, expelled from high school, discharged from the military with an other-than-honorable discharge due to misconduct, and fired from multiple jobs due to various transgressions. Kluball threatened to kill his parents with a baseball bat as a child, threatened to stab his foster parents and to attack his foster brother with a meat cleaver as a teenager, and threatened others with a concealed weapon as an adult.

Kluball did not object to the presentence report's description of his mental health history or offer evidence to undermine or augment it. The district court adopted the report's findings at sentencing, as it was entitled to do. See *United States v. Sonsalla*, 241 F.3d 904, 907 (7th Cir. 2001). The court imposed the guidelines term of 120 months. In so doing, the court remarked:

> I think the bottom line here is that when I look at the records of Mr. Kluball's troubles, there is no diagnosis of a mental illness here that really relieves Mr. Kluball of responsibility. He is a person who is upsettable, is sometimes violent. He's defiant. And all of these things are difficulties and maybe things that are amenable to some kind of treatment, but I don't see any diagnosis here that really makes me feel like I should consider Mr. Kluball's culpability for this very calculating kind of criminal act that he committed here to be alleviated. He's responsible for what he did despite the fact that he has a history of problems that may involve mental health issues.

The bottom line here is that Mr. Kluball has proven himself to be very dangerous. Even after these things came to light, he's posting pictures on Facebook showing his guns. He's manifestly at risk of self-harm. But if we were to look at this pattern here and find Mr. Kluball's fascination with guns and his defiant behavior, I think you'd have to conclude, as I do, that he really is a dangerous person and that the protection of the public is a factor that has to drive the sentence in a significant way.

… [T]he bottom line here is that not only is he dangerous, I think his history suggests that there is no structure or treatment that realistically suggests that it's going to have any … lasting impact on Mr. Kluball's ability to conform himself to, let alone lawful behavior, just safe behavior. I think that—I'm left only with the conclusion that there is only incarceration which provides the kind of level of structure that Mr. Kluball can succeed in and that keeps the public safe.

As Kluball acknowledges, a sentencing judge may consider whether mental health treatment will succeed in reducing the defendant's dangerousness or propensity to commit further crimes. The governing statute, in fact, *requires* the judge to consider "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). As we have explained, "incapacitation (physically preventing the defendant from committing crimes on 'the outside,' by imprisoning him) is an authorized factor

for a judge to consider in determining the length of a prison sentence." *United States v. Kubeczko*, 660 F.3d 260, 262 (7th Cir. 2011) (citing § 3553(a)(2)(C)). This is so even if the defendant's difficulties refraining from criminal conduct result from mental illness. See *ibid.* (rejecting the proposition that "there is any impropriety in lengthening a sentence because of concern— whether based on mental illness, addiction, or anything else that may weaken a person's inhibitions against committing crimes—that the defendant is likely to commit further crimes upon release"); *United States v. Miranda*, 505 F.3d 785, 793 (7th Cir. 2007) ("In this case, there is evidence that [the defendant] was being treated for mental illness at the time he committed his crimes, and so the court may determine that the only way to truly incapacitate [the defendant] is a heavy prison sentence."). True, a sentencing judge may find a defendant's mental illness to be a mitigating rather than an aggravating factor, or both mitigating and aggravating. See *United States v. Annoreno*, 713 F.3d 352, 358 (7th Cir. 2013); *Miranda*, 505 F.3d at 792. But the degree to which mental illness is deemed mitigating or aggravating, and the weight accorded that factor, lies within the sentencing judge's broad discretion. See *United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) ("Ultimately, it falls on the district court to weigh and balance the various factors and to make an individualized assessment based on the facts presented.") (internal quotation marks omitted); *United States v. Beier*, 490 F.3d 572, 574 (7th Cir. 2007) ("The statute does not attach weights to these factors, thus leaving the sentencing judge with enormous latitude … .").

Although Kluball does not dispute these principles, he contends that the record at sentencing did not permit the district court to conclude that "his history suggests that there is no structure or treatment that realistically suggests that it's

going to have any … lasting impact on [his] ability to conform himself to … lawful behavior … ." This flaw in the district court's reasoning, Kluball says, violated his due process rights.

"A convicted defendant has a due process right to be sentenced on the basis of accurate information." *United States v. Melendez*, 819 F.3d 1006, 1012 (7th Cir. 2016). Additionally, "due process requires that sentencing determinations be based on reliable evidence, not speculation or unfounded allegations." *United States v. Bradley*, 628 F.3d 394, 400 (7th Cir. 2010); see also *United States v. England*, 555 F.3d 616, 622 (7th Cir. 2009). To show a violation of this right, "a defendant must demonstrate that the information before the court was inaccurate and that the court relied on this inaccurate information." *United States v. Katalinich*, 113 F.3d 1475, 1484 (7th Cir. 1997).

Kluball does not and cannot make that showing. The facts set forth in the presentence report amply support the district court's conclusion that treatment is unlikely to have a "lasting impact" on Kluball's ability to refrain from criminal conduct. Kluball has been hospitalized every few years throughout his life and treated with various medications; he has received counseling; and he has spent time in various structured environments, including special education classes, juvenile detention, and the military. Despite these many medical and environmental interventions, Kluball has consistently engaged in dangerous and unlawful behavior. It was well within reason—and certainly not an abuse of discretion—for the district court to take Kluball's history into account and draw the conclusion that further mental health treatment is unlikely to succeed in enabling him to conform to societal norms.

Kluball is wrong to liken this case to *Bradley* and *England*, where the district judges engaged in impermissible speculation when imposing sentence. In *Bradley*, the sentencing judge "made a prediction about future conduct based on rank speculation about other, multiple instances of deviant behavior" of which there was no record evidence. 628 F.3d at 401. In *England*, the sentencing judge's "unsupported speculation" was that the defendant would have committed the crime of attempted murder had he been released on bond. 555 F.3d at 623.

The district court here engaged in no such speculation. To the contrary, the court's finding that treatment was unlikely to have a "lasting impact" on Kluball was reasonably based on the fact, which he does not dispute, that he has throughout his life suffered from mental illness, endangered those around him, and engaged in criminal conduct, notwithstanding his being afforded mental health treatment and placed in structured environments. Sentencing routinely requires the judge to make predictions about the defendant's future conduct and, in particular, his ability to lead a law-abiding life. See *United States v. Boroczk*, 705 F.3d 616, 622 (7th Cir. 2013) ("Neither the district court nor the various doctors who testified or provided input at sentencing were blessed with a crystal ball to predict [the defendant's] future behavior. In the absence of such certainty, the district court simply weighed the evidence before it and concluded that the risk of future crimes was a factor in favor of a lengthy sentence."); *United States v. Neary*, 552 F.2d 1184, 1193 (7th Cir. 1977) (noting that "evaluation of the character of the defendant and a prediction of future conduct [are] matters which are traditionally left to wide discretion of a sentencing court"). Such predictions do not violate

due process where, as here, they reasonably follow from ac-
curate information in the sentencing record. See *United States
v. Lucas*, 670 F.3d 784, 792–93 (7th Cir. 2012) (rejecting a due
process claim comparable to the claim brought here); *United
States v. Morales*, 655 F.3d 608, 646–47 (7th Cir. 2011) (same).

AFFIRMED