In the

# United States Court of Appeals

### For the Seventh Circuit

No. 12-1022

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRICK C. BOROCZK,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 09 CR 647—**Ronald A. Guzman**, *Judge.*

ARGUED OCTOBER 23, 2012—DECIDED JANUARY 18, 2013

Before FLAUM and SYKES, *Circuit Judges*, and RANDA, *District Judge.**

RANDA, *District Judge.* Darrick C. Boroczk ("Boroczk"), a self-described "kingpin" of child pornography on the internet, created hundreds of sexually explicit images and videos involving two of his own children. Boroczk

* The Honorable Rudolph T. Randa, United States Court for the Eastern District of Wisconsin, sitting by designation.

pled guilty to four counts of manufacturing and one count of possessing child pornography. After a daylong sentencing hearing, the district court imposed four 15-year sentences on the manufacturing counts and a 10-year sentence on the possession count, to be served consecutively, for a total of 70 years' imprisonment. On appeal, Boroczk argues that the district court committed procedural error and imposed a substantively unreasonable sentence. Finding no merit in Boroczk's arguments, we affirm the 70-year sentence.

## I.  Background

The facts in this case are disturbing and graphic, but they must be described in some detail given the nature of Boroczk's challenge to the sentence. Boroczk has five children, two of whom were involved in the above-described incidents. Between 2006 and 2008, Boroczk created approximately 300 still images and multiple videos of his three- to five-year-old daughter and/or his two-year-old son engaging in sexually explicit conduct. In addition to these images and videos, authorities found approximately 8,452 still images and 186 videos of child pornography on the hard drive of Boroczk's computer. In count five of the indictment, Boroczk was charged with possessing the foregoing items of child pornography. 18 U.S.C. § 2252A(a)(5)(B). In counts one through four, Boroczk was charged with manufacturing child pornography. 18 U.S.C. § 2251(a).

Boroczk was charged on July 29, 2009 and arrested the following day. Speaking with law enforcement, Boroczk

initially told agents that he had never taken any "inappro-priate" pictures of his children. Presentence Report ("PSR"), Ex. B at 4. However, after agents told Boroczk that his likeness had been captured in pictures with his children, Boroczk admitted to taking pornographic pictures of his kids, although he claimed that he "defi-nitely" took fewer than 100 pictures. *Id.*

When asked what drove him to take pornographic pictures of his own children, Boroczk replied, "Curiosity." *Id.* at 6. Boroczk further stated that while he was chatting online, a person with whom he was chatting would occasionally ask if he had ever taken pornographic pictures of his own children. In response, Boroczk would on occasion have his children show their chest or buttocks to a webcam so the person he was chatting with could see them in real time. *Id.*

Agents then asked Boroczk if he ever inappropriately touched his children. Boroczk responded, "I'm sure I did, with my hand, topically." *Id.* However, Boroczk denied that he ever touched his son, or that he made his children touch or perform sexual acts on each other. *Id.* Further, Boroczk claimed that he never touched his children with his penis, and that his penis was never near his children. *Id.*

Agents then confronted Boroczk with twenty images of his children recovered from a computer in Pennsyl-vania. *Id.* Boroczk admitted that he took all of the pictures, and that the images were of his daughter and/or his son. These images included: (1) Boroczk's daughter lying on her back with her legs spread while Boroczk's

erect penis was pressed against her vagina; (2) Boroczk's daughter lying on an open diaper with her legs spread and Boroczk's erect penis in her right hand; and (3) Boroczk's son lying on his back with his legs spread and Boroczk's daughter touching his exposed penis and testicles. (Boroczk stated that he told his daughter to touch his son's penis, and that his daughter "did not have any problem with it"). *Id.* at 6-10.

Agents then asked Boroczk to describe how he touched his children. Boroczk said that he tried to penetrate his daughter's vagina and anus with his penis but "it wouldn't go in" and she said it hurt. Instead, Boroczk rubbed the tip of his penis against her vagina and anus, and inserted the tip of his penis into her vagina. Further, Boroczk admitted that he had her masturbate him by having her touch his penis with her hand. Boroczk stated that on a few occasions, he ejaculated on her stomach. *Id.* at 10. When he was touching her, Boroczk told his daughter that "daddy loves her and won't do anything to hurt her." *Id.* at 11.

After initially denying that he touched his son, Boroczk later admitted that he masturbated him because he was "curious to see if a child that young could get an erection." *Id.* at 10. In addition, Boroczk admitted that he instructed his daughter to touch his son's penis and testicles. Boroczk also asked his son to touch his daughter's vagina, but according to Boroczk, his son "said no. He didn't care for it. He just wanted his diaper on." *Id.*

When asked what sexually attracted him to his own children, Boroczk responded, "Their innocence and

purity." *Id.* at 11. Boroczk further said that "it was fun" taking pornographic pictures with his children, that his children seemed to be having a good time, and that he did not think he was hurting them. Boroczk said that he chatted online almost every day with other individuals who were interested in child pornography when he had internet access at his residence. He also sent pornographic images and videos of his children to those individuals. *Id.* at 12.

## II. Sentencing

In his sentencing memorandum, Boroczk requested a fifteen-year mandatory minimum sentence. In support, Boroczk filed a report from Dr. Mickey Morgan, a clinical psychologist, who stated that Boroczk was undergoing weekly telephone counseling sessions. According to Dr. Morgan, Boroczk initially struggled with "demonstrating levels of remorse consistent with the severity of his crime." Morgan Report at 2. However, Boroczk's level of remorse "dramatically improved along with his empathy for both direct and indirect victims." Dr. Morgan stated that Boroczk's clinical prognosis for "successful long-term rehabilitation" was excellent, assuming Boroczk's "continued sincere efforts in treatment." *Id.* at 3.

Boroczk also filed a report from Dr. Michael Fogel, a psychologist. Dr. Fogel recounted Boroczk's path from viewing adult pornography on the internet to viewing child pornography and eventually creating child pornography. Dr. Fogel wrote that Boroczk had "few static, or unchangeable, risk factors that have been shown to

be associated with sexual recidivism," such as "prior criminal history, prior sexual offending, resistance to rules and supervision, employment instability, having never been married, and stranger or unrelated victims." Fogel Report at 20-21. Dr. Fogel conceded that Boroczk presented "several risk factors," including "sexual preoc-cupation, deviant sexual interest, offense-supportive attitudes, and intimacy deficits." *Id.* at 21. However, Dr. Fogel discounted these factors based on research which shows that incest sexual offenders recidivate at a lower rate than extra-familial sexual offenders. In ad-dition, Boroczk would be much older and presumably be on supervised release for an extended period of time after his term of confinement. *Id.* Accordingly, Dr. Fogel concluded that Boroczk's "risk to commit a future hands-on sexual offense is low." *Id.*

In its own submissions, the government requested a guidelines sentence capped at the statutory maximum of 130 years. The government generally argued that all of the relevant sentencing factors favored the maximum possible sentence. 18 U.S.C. § 3553(a). Regarding the need to "protect the public from further crimes of the defendant," § 3553(a)(1)(C), the government submitted a letter from psychologist Dr. Tracy L. Rogers, who was asked to "comment on the methods and process employed by Dr. Fogel in arriving at his conclusions, and to point out any areas of disagreement." Rogers Letter at 1. Dr. Rogers criticized Dr. Fogel's failure to conduct a phallometric assessment, specifically the Penile Plethysmograph ("PPG"). "The single strongest predictor of sexual recidivism is sexual interest in children as

measured by phallometric assessment. Objective physio-
logical assessment is [the] best method of measuring
sexual interest/arousal, both healthy and deviant, and
the [PPG] is the gold standard of physiological assess-
ment." *Id.* at 2.[1] Dr. Rogers also criticized Dr. Fogel's
failure to offer an opinion as to whether Boroczk is a
pedophile because "sexual interest in children, a marker
for DSM-IV pedophilia, correlate[s] strongly with sexual
recidivism." *Id.* Ultimately, Dr. Rogers "disagree[d] with
[Dr. Fogel's] opinion that Mr. Boroczk is low risk
to commit additional sexual offenses" because Dr. Fogel

---

[1] At sentencing, Dr. Rogers described the PPG as follows:

> It's an examination [that] measures deviant sexual interests
> and non-deviant sexual interests as well. The client sees—
> there's 22 segments to the test. The client is [alone] in a
> room. . . . They have a respiratory belt on, electrodes
> that measure changes in skin conductance, and they have
> a gauge that goes around their penis that measures change
> in penile circumference. They are shown videos. Each
> segment is—consists of—when it begins, they show a
> photo of the age and gender of the person that the story is
> about. The photo then leaves the screen and there's 90
> seconds of audio that describes a very sexually graphic
> scene. . . . [T]hen after the audio, then more pictures of
> the person that the story was about return.
>
> During the test the client is asked to press a button
> after they hear a tone. The tone indicates—when they press
> the button once, it means they think the story is persuasive;
> twice if they think it's coercive or mean or violent.

Sent. Tr. at 110-11.

did not have "sufficient evidence to offer an opinion on risk . . . ." *Id.*

At sentencing, the district court heard testimony from Dr. Fogel and Dr. Rogers in rebuttal; Dr. Morgan did not testify. On cross-examination, the government questioned Dr. Fogel about his prior testimony in a commitment proceeding in state court. Sent. Tr. at 61. In that case, Dr. Fogel advanced the opinion that an individual posed a high risk of committing future sex offenses against children because he was a pedophile. This was in spite of an actuarial assessment which indicated that this person posed a low risk of recidivism.

In announcing its sentence, the district court began by acknowledging that the guidelines range called for a life sentence, which defaulted to the maximum sentence on each of the five counts in the indictment. Then, the court considered the various factors under § 3553(a), including the nature and circumstances of the offense and the need for the sentence to reflect the seriousness of that offense. The court explained:

> The offense in this case at its essential core consists of taking advantage of innocent and defenseless children repeatedly over a prolonged period of time for the sole purpose of personal sexual gratification. That's it. And this is done by the very person charged, not only under law but by every parameter of our society, with protecting them from such abuses. It's conduct that no civilized society can possibly allow no matter what the circumstances.

Sent. Tr. at 159.

With regard to specific deterrence and the need to protect the public from future crimes, the district court considered the testimony of Dr. Fogel and Dr. Rogers, ultimately rejecting Dr. Fogel's opinion as unreliable.

> Not only are some of Dr. Rogers' criticisms valid, but Dr. Fogel's own testimony, specifically that testimony in which he indicated that he felt the determination as to whether the defendant was a pedophile would be irrelevant, was frankly confusing, especially in view, as brought out on cross-examination, of the fact that he had previously testified that because a respondent suffered from pedophilia, he was more likely to commit acts of sexual violence in the future. I find those two statements irreconcilable.

*Id.* at 160-61.

The court continued:

> I find the defendant's own statements at the time of his arrest to be most revealing. It appears to be clear from the way he described his conduct about what he did with his children that he actually believed he could subject his children to such conduct without harming them. His disclaimers that he would never hurt them or did not intend to hurt them or that he stopped if they informed him they were being hurt or did not want him to continue reflect a total lack of comprehension of how any such conduct was inherently and permanently harmful to his children. And, therein, it appears to me, lies the real risk for the future.

Lacking any substantial comprehension of the violent and destructive nature of his conduct towards his own children, it seems to me, the defendant most likely lacks any real motivation to restrain himself in the future, other, of course, than the motivation that comes from the fear of being caught. But in that regard, there is no amount of supervision, no number of protective safeguards that can possibly protect other children from this defendant in the future if he himself is not motivated.

His conduct in this case, although it was his first offense, was repeated many, many times over a period of years, both as to his children and with respect to his prolific Internet activities, and leaves us with no doubt that he has an extreme sexual interest, both in child pornography and in actual physical contact with very young children. And this, it seems to me, makes protection of the public paramount in this case.

*Id.* at 161-62.

Accordingly, the district court sentenced Boroczk to "180 months on each of Counts One through Four and 120 months on Count Five, with all counts to be served consecutively." *Id.* at 162. Boroczk's projected release date is August 14, 2070, at which time he will be 93 years of age.[2]

---

[2] http://www.bop.gov/iloc2/LocateInmate.jsp (use "Search by Name" function). This projection assumes the accumulation
(continued…)

### III. Analysis

### A. Sentencing Procedures

The district court is required to follow a two-part procedure at sentencing. First, it must calculate the defendant's sentencing range under the advisory guidelines. *United States v. Dale*, 498 F.3d 604, 611 (7th Cir. 2007). The district court correctly explained that Boroczk's guidelines range was life in prison, which means that the range defaulted to the maximum sentence on each count—30 years on counts one through four and 10 years on count five, for a total of 130 years. U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence"); *United States v. Veysey*, 334 F.3d 600, 602 (7th Cir. 2003) ("The federal sentencing guidelines direct the judge, when there are multiple counts of conviction, to impose maximum and consecutive sentences to the extent necessary to make the total punishment equal in severity to what the guidelines would require were it not for the statutory maxima") (citing U.S.S.G. § 5G1.2(d)); *United States v. Craig*, No. 12-1262, 2012 WL 6572509, at *1 (7th Cir. Dec. 18, 2012) ("the guidelines tell the judge to sentence consecutively when necessary to bring the total

---

[2] (...continued)

of good time credits. 18 U.S.C. § 3624(b); *United States v. Craig*, No. 12-1262, 2012 WL 6572509, at *1 (7th Cir. Dec. 18, 2012) (Posner, J., concurring).

sentence into the guidelines range, even though the sentence would exceed the statutory maximum sentence for any count of which the defendant was convicted . . . .").

Second, the district court must "hear the arguments of the parties and conclude by making an individualized assessment of the appropriate sentence based on the § 3553(a) factors." *United States v. Booker*, 612 F.3d 596, 601 (7th Cir. 2010) (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). To comply with this requirement, the district court must give the parties "an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence." *United States v. Holt*, 486 F.3d 997, 1004 (7th Cir. 2007). Ultimately, the court "must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50.

Boroczk argues that the district court erred because its sentence was based on the conclusion that he was certain to recidivate for the rest of his life. This is a rather extreme mischaracterization of the rationale for the district court's sentence. Neither the district court nor the various doctors who testified or provided input at sentencing were blessed with a crystal ball to predict Boroczk's future behavior. In the absence of such certainty, the district court simply weighed the evidence before it and concluded that the risk of future crimes was a factor in favor of a lengthy sentence.

As a more specific critique, Boroczk argues that the district court either ignored or did not adequately

confront certain pieces of evidence in support of his argument that he was not likely to recidivate. For example, Boroczk presented evidence that incest offenders are less likely to recidivate than extra-familial offenders, that the risk of re-offending decreases with advancing age, and that despite an initial lack of remorse, Boroczk eventually expressed remorse for his crimes. Even though this evidence was not specifically mentioned, the district court rejected it by implication when it focused on the fact that Boroczk is a pedophile who expressed an alarming lack of remorse for his crimes after being caught. "District judges need not belabor the obvious. The judge need not be explicit where 'anyone acquainted with the facts would have known without being told why the judge had not accepted the argument.'" *United States v. Gary*, 613 F.3d 706, 709 (7th Cir. 2010) (citing *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005)).

### B. Substantive Reasonableness

A sentence is reasonable if the district court "gives meaningful consideration to the factors enumerated in [18 U.S.C.] § 3553(a), including the advisory sentencing guidelines, and arrives at a sentence that is objectively reasonable in light of the statutory factors and the individual circumstances of the case." *United States v. Shannon*, 518 F.3d 494, 496 (7th Cir. 2008). This court reviews the substantive reasonableness of a sentence under a deferential, abuse of discretion standard with the presumption that a sentence within or below the guidelines

range is reasonable. *United States v. Anderson*, 580 F.3d 639, 651 (7th Cir. 2009); *United States v. Wallace*, 531 F.3d 504, 507 (7th Cir. 2008) ("A sentence within the [guidelines] range is presumptively reasonable, and it follows that a sentence below the range also is presumptively not too high") (citing *Rita v. United States*, 551 U.S. 338 (2007)).

Boroczk argues that the presumption of reasonableness does not apply when the guidelines range exceeds the statutory maximum and the court stacks consecutive sentences. This is incorrect. For example, in *United States v. Noel*, 581 F.3d 490 (7th Cir. 2009), the defendant was charged with three counts of producing and one count of possessing child pornography. The defendant's guidelines range was life in prison, which defaulted to the combined statutory maximum of 100 years' imprisonment, and the district court sentenced Noel to 80 years' imprisonment—25 years on the first three counts and five years on the last count, to be served consecutively. *Id.* at 495 n.4. In reviewing Noel's sentence, this court applied the presumption of reasonableness because the sentence was "actually twenty years *below* the guidelines sentence of one hundred years' imprisonment." *Id.* at 500 (emphasis in original). Similarly, Boroczk's 70-year sentence was 60 years below the guidelines range of 130 years' imprisonment. *See also United States v. Russell*, 662 F.3d 831, 853 (7th Cir. 2011) (applying presumption to 38-year sentence where the guidelines range was life, which reverted to the statutory maximum of 120 years); *United States v. Klug*, 670 F.3d 797, 800 (7th Cir. 2012); *United States v. Tanner*, 628 F.3d 890, 908 (7th Cir. 2010) (a guidelines range of life imprisonment "effectively

render[s] any prison sentence presumptively reasonable on appeal by the defendant").

Boroczk argues that the foregoing cases were wrongly decided because they did not consider the statutory presumption *against* consecutive sentences. 18 U.S.C. § 3584(a) ("Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively"). This so-called presumption has nothing to do with the calculation of a sentencing guidelines range. With respect to the guidelines, the presumption of reasonableness "reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one." *Rita*, 551 U.S. at 347 (emphasis in original). Boroczk does not dispute that his guideline range was calculated correctly.

With the presumption firmly in place, Boroczk must show that his sentence is "substantively unreasonable in light of the sentencing factors set forth in section 3553(a)." *Russell*, 662 F.3d at 853 (citing *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005)). The district court's sentence is not unreasonable simply because it emphasized the need for just punishment. Sentencing judges "have discretion over how much weight to give a particular factor. Although the weighting must fall 'within the bounds of reason,' those bounds 'are wide.'"

*United States v. Reibel*, 688 F.3d 868, 872 (7th Cir. 2012) (internal citations and quotations omitted). Much like the defendant in *Noel*, Boroczk's actions were "unspeakable." 581 F.3d at 501. In *Noel*, the defendant took nude photographs of his stepbrother's young son and possessed other images of child pornography. As horrible as that is to imagine, Boroczk's actions were even more monstrous because he created images and videos of himself molesting his own children, sharing these images with his online "friends." In that light, and in specific comparison to the 80-year sentence in *Noel*, Boroczk's 70-year, below-guidelines sentence is reasonable.

## IV.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.