NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 18, 2015
Decided March 17, 2016

**Before**

RICHARD A. POSNER, *Circuit Judge*

DANIEL A. MANION, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-1301

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | Appeal from the United States District Court for the Central District of Illinois. |
| *v.* | No. 12-CR-20022 |
| DEANDRE D. HAYNES, *Defendant-Appellant*. | Harold A. Baker, *Judge*. |

## O R D E R

Deandre Haynes challenges the 120-month prison sentence imposed on his convictions for possessing, and conspiring to possess and distribute, pseudoephedrine. He argues that the sentencing court thought itself obligated to tip the scale in favor of retribution when applying the statutory sentencing factors in 18 U.S.C. § 3553(a), and also failed to address two principal arguments in mitigation. The first contention rests on a misreading of the judge's explanation for the sentence. And the two arguments in mitigation did not require any response from the judge. Thus, we affirm the sentence.

Haynes sold crack cocaine but also supplied manufacturers of methamphetamine with boxes of over-the-counter cold and allergy medication containing

pseudoephedrine. He acquired the medication by giving his customers and other crack users about $10 in cash or drugs for each box they purchased from a pharmacy. A typical box, which Haynes resold for roughly five times what he paid, contained enough pseudoephedrine to make about 2 grams of methamphetamine. One methamphetamine maker testified that he produced at least 2 kilograms using pseudoephedrine supplied by Haynes. Haynes was arrested while trying to sell pseudoephedrine to an undercover agent.

A jury found Haynes guilty of three crimes: conspiracy to manufacture methamphetamine, 21 U.S.C. §§ 846, 841(a)(1); conspiracy to possess and distribute pseudoephedrine for use in manufacturing methamphetamine, *id*. §§ 846, 841(c)(2); and possession of pseudoephedrine for use in manufacturing methamphetamine, *id*. § 841(c)(2). Initially, Haynes was sentenced to a total of 240 months' imprisonment by Judge McCusky. After Haynes filed a direct appeal, however, the government conceded that the jury had been given a faulty instruction on the count for conspiring to manufacture methamphetamine. The government proposed that the error be remedied by vacating the conviction on that count, dismissing the charge, and resentencing Haynes on the two surviving counts. We granted the parties' joint motion to remand for that purpose. By then, however, Judge McCusky had retired from the federal bench, and the case was reassigned to Judge Baker, who stated that he had not presided over a criminal matter since taking senior status 16 years earlier.

On remand a probation officer revised the presentence investigation report for use in resentencing Haynes. The probation officer attributed to him 2.88 kilograms of pseudoephedrine (that weight isn't disputed and may be very conservative; in some weeks Haynes had sold 100 boxes of medication, each with enough dosages of pseudoephedrine—typically 60 mg—to total nearly 3 grams per box). The probation officer calculated a total offense level of 37—a base offense level of 34 (applicable to weights of 1 to 3 kilograms of pseudoephedrine), *see* U.S.S.G. § 2D1.11(a), (d)(3), plus three levels for being a manager or supervisor in a criminal activity involving five or more participants, *see id.* § 3B1.1(b)—and a criminal history category of I, yielding a guidelines imprisonment range of 210 to 262 months.[1]

---

[1] In his brief Haynes notes that the probation officer, citing U.S.S.G. § 5G1.1(c)(1), concluded that the upper end of the imprisonment range was capped at 240 months, the statutory maximum for each of the two surviving counts, *see* 21 U.S.C. §§ 846, 841(c)(2). That conclusion was wrong; § 5G1.1(c)(1), which says that a sentence cannot be "greater than the statutorily authorized maximum sentence," is irrelevant. Section 5G1.1—as its

In a sentencing memorandum, counsel for Haynes accepted without objection the probation officer's proposed factual findings. Counsel argued, though, that the total offense level should be lowered by two levels because, counsel said, Haynes always had accepted responsibility for the two surviving counts and had gone to trial only because he disagreed that his sales of pseudoephedrine had made him a part of the conspiracy to *manufacture* methamphetamine. Haynes also objected to the upward adjustment for being a manager on the ground that fewer than five people had participated in the criminal activity.

In addition, Haynes argued that the Chapter 2 guideline for pseudoephedrine crimes, § 2D1.11, is "flawed" because, he insisted, the imprisonment range resulting from applying that guideline to a particular quantity of pseudoephedrine will exceed the range applicable under U.S.S.G. § 2D1.1 to the weight of the methamphetamine which could be made from the pseudoephedrine. As a matter of discretion, Haynes argued, the district court should take into account this "disparity" because Congress deemed "a violation of the pseudoephedrine laws to be considerably less serious than a violation of the methamphetamine laws." For several reasons, Haynes argued that he should have a below-range sentence of 72 months. In addition to the purported disparity, he also listed mitigating factors, including his status as a nonviolent first-time offender, his efforts at rehabilitation since the initial sentencing hearing (he had obtained a GED and completed a drug-treatment program in prison), and the need for parity between his sentence and the sentences of his confederates and other drug offenders nationwide.

After listening to Haynes's objections to the guidelines range, as well as allocution from counsel and Haynes, Judge Baker imposed a total of 120 months' imprisonment. The judge offered this explanation:

> I'm old. You know, I'm a senior judge; and when I went to law
> school, we were taught rehabilitation. And then with the advent of the

---

title conveys—applies only if the defendant is being sentenced on a *single* count, not multiple counts. Sentencing on multiple counts is governed by § 5G1.2, and that guideline does not shave the upper end of the imprisonment range to correspond with the statutory maximum for any particular count. Rather, § 5G1.2 calls for *consecutive* terms of imprisonment if the imprisonment range exceeds the statutory maximum for the most serious count. *See United States v. Spano*, 476 F.3d 476, 478 (7th Cir. 2007); *United States v. Vesey*, 334 F.3d 600, 602 (7th Cir. 2003); *United States v. Gray*, 332 F.3d 491, 493 (7th Cir. 2003).

Reagan Administration, everything changed to punishment. And that's a legitimate retribution. Revenge is a legitimate end of, of corrections in the criminal law.

And there's also the question of incapacitation, that somebody is so dangerous that you lock them away from society.

Deterrence in the drug business, I'm not sure how much deterrence there is. There may be individual deterrence.

You know, I'm encouraged by, by your conduct while you've been incarcerated and that you did get your GED and that you're, you're taking the drug courses. And you have shown a definite tendency to rehabilitation and to clean up your life, if you will, and, and be a law-abiding person.

And I'm, I'm willing to take a chance on you.

Now, the guidelines are draconian. I looked at the, one of the recommendations, which would put you back in prison for close to 17 years. And you're 25 now. And for what purpose? Punishment. Certainly not rehabilitation. Just it's retribution.

So, I'm going to depart because you've shown this ability to rehabilitate. You got, you got a lot to do yet. And you're no angel. I mean, you were a part of a terrible drug conspiracy. There's no question about it. You were an enabler. And you were smart enough that you were making a profit. You were buying low and selling high.

So, in my opinion, a ten-year sentence, 120 months, is a harsh sentence; and it's the judgment of the Court on Counts … 2 and 3.

At that point, however, the judge had not ruled explicitly on Haynes's guidelines objections. At the government's prompting, the court then ruled in favor of Haynes on those objections. The judge explained that he is "a pragmatic guy," and that the objections essentially were "moot" because the 120-month sentence he was imposing still was below the corrected imprisonment range of 151 to 188 months. The judge

acknowledged that 120 months was "still a stiff sentence" but said that the term was appropriate for the reasons given.

On appeal Haynes makes much of Judge Baker's lament that with the Reagan Administration came a shift in sentencing philosophy from rehabilitation to punishment; the judge noted that retribution was a "legitimate end," but he also called the sentencing guidelines "draconian." Haynes argues that these comments demonstrate that Judge Baker erroneously thought that he must impose a harsh sentence rather than exercising discretion to impose a sentence sufficient, but not greater than necessary, to meet the many other goals identified in 18 U.S.C. § 3553(a). Claims of procedural error at sentencing are reviewed de novo, *United States v. Baines*, 777 F.3d 959, 965 (7th Cir. 2015), and in this case there was no error.

Haynes has it backward. Judge Baker did not *endorse* the perceived shift in sentencing philosophy from rehabilitation to retribution; he instead implied strong disagreement with that change in view. The judge made clear that he saw in Haynes the potential of being rehabilitated, and, as the government notes, the judge gave this factor the greatest weight in deciding to impose a sentence below the guidelines range.

A sentencing court need not, as Haynes suggests, say that the sentence imposed is enough but not too much. *See United States v. Abebe*, 651 F.3d 653, 656–57 (7th Cir. 2011); *United States v. Tyra*, 454 F.3d 686, 687 (7th Cir. 2006). Rather, the court must give meaningful consideration to the sentencing factors and articulate the factors that determined its chosen sentence. *See Abebe*, 651 F.3d at 656–57; *Tyra*, 454 F.3d at 687–88. Judge Baker did that; he voiced the view that the guidelines are draconian as one reason to sentence Haynes below the range, along with Haynes's negligible criminal history and potential for rehabilitation. On the other hand, the court acknowledged the legitimate goal of retribution, which is one factor to consider in sentencing a defendant. *See* 18 U.S.C. § 3553(a)(2)(A). By sentencing Haynes to 120 months, Judge Baker obviously demonstrated that he did not feel bound by a range that he thought was unnecessarily harsh.

Haynes next argues that Judge Baker "failed to address two principal arguments in mitigation relating to the need to avoid unwarranted sentencing disparities among similar defendants." This contention relates both to (1) Haynes's comparison of himself to his confederates and other drug traffickers, and (2) the supposed flaw in § 2D1.11 (the pseudoephedrine/methamphetamine "disparity"). A sentencing court must address principal arguments in mitigation, except for those that are stock or too insubstantial to

merit discussion. *United States v. Modjewski*, 783 F.3d 645, 654 (7th Cir. 2015); *United States v. Cheek*, 740 F.3d 440, 455–56 (7th Cir. 2014); *United States v. Garcia-Segura*, 717 F.3d 566, 568 (7th Cir. 2013); *United States v. Ramirez-Fuentes*, 703 F.3d 1038, 1047–48 (7th Cir. 2013). The exception covers both of these arguments.

For the comparison to his confederates, Judge Baker was aware that other defendants who were prosecuted as part of the same investigation as Haynes had pleaded guilty and cooperated with the government. The judge also entertained defense counsel's assertion that "around the country" the typical sentence for drug traffickers who engage in Haynes's "type of conduct" is "around six or seven years." The judge did not comment further, however, and, according to Haynes, the 72-month sentence his lawyer recommended would be fairer in comparison with the sentences of other defendants who actually manufactured methamphetamine and had more extensive criminal histories. Those sentences ranged from a year-and-a-day to 180 months.

We have explained repeatedly that 18 U.S.C. § 3553(a)(6) addresses unwarranted disparities among judges or districts, not among codefendants. *United States v. Grigsby*, 692 F.3d 778, 792 (7th Cir. 2012); *United States v. Scott*, 631 F.3d 401, 405 (7th Cir. 2011). Haynes was sentenced below a range calculated on the basis of nationwide statistics, and thus "it is 'most unlikely'" that his sentence resulted in an unwarranted disparity. *See United States v. Nania*, 724 F.3d 824, 840–41 (7th Cir. 2013) (quoting *United States v. Annoreno*, 713 F.3d 352, 359 (7th Cir. 2013)). Thus, as *United States v. Martin*, 718 F.3d 684, 688 (7th Cir. 2013), makes explicit, Judge Baker was free to pass over this argument in silence. Anyway, even if a comparison to codefendants was the appropriate focus, "cooperation should be rewarded and is a warranted disparity." *United States v. Gonzalez*, 765 F.3d 732, 739 (7th Cir. 2014); *accord United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). Moreover, Haynes's prison term falls roughly in the middle of the terms imposed on his confederates, and that's after taking into account their cooperation.

Judge Baker also was free to reject without comment Haynes's argument that the guidelines produce a pseudoephedrine/methamphetamine "disparity." According to Haynes, his base offense level would have been two levels lower had he been sentenced on the vacated charge of conspiring to manufacture methamphetamine, rather than the two counts relating to dealing pseudoephedrine. Haynes, though, is wrong. In *United States v. Stacy* we noted that the Sentencing Commission had based its ratio of pseudoephedrine to methamphetamine on the typical yield from clandestine laboratories. 769 F.3d 969, 977 (7th Cir. 2014); *see also United States v. Martin*, 438 F.3d 621,

625 (6th Cir. 2006) (discussing Sentencing Commission's adoption of conversion ratio for pseudoephedrine to methamphetamine). In *Stacy* we also rejected the notion that Congress obviously viewed pseudoephedrine crimes as less serious than manufacturing methamphetamine. 769 F.3d at 976–77.

Sentencing courts may reject without explanation an "argument in mitigation" that really is nothing more than a blanket challenge to a guideline as applied in every case. *United States v. Estrada-Mederos*, 784 F.3d 1086, 1088 (7th Cir. 2015); *United States v. Schmitz*, 717 F.3d 536, 542 (7th Cir. 2013). Haynes insists that his argument was particularized to the facts of the case, but, again he is wrong. As the government points out, Haynes included just one sentence about the "facts" in his sentencing memorandum, and then at the sentencing hearing he didn't elaborate on the evidentiary foundation for his claim of a pseudoephedrine/methamphetamine "disparity." And even if he had, we already said in *Stacy* that Haynes's argument is not unique to his own situation. Rather, "his reasoning represents a fundamental policy disagreement with the Sentencing Commission's advisory drug ratios." *Stacy*, 769 F.3d at 976–77.

Haynes seizes on a statement made at trial by Joseph Long, one of two men who manufactured methamphetamine with pseudoephedrine supplied by Haynes. Long was asked to ballpark the number of boxes of cold and allergy medication he had purchased from Haynes and the amount of methamphetamine he would have produced from each box; Long answered, "At least 1,000" boxes and, "Two grams per box; so approximately 2,000 grams." Yet, according to the probation officer, both Long and the other methamphetamine "cook," Zachary Gordon, had told investigators they produced 5,000 grams, the threshold for a base offense level of 34 in a prosecution for manufacturing methamphetamine. *See* U.S.S.G. § 2D1.1(c)(3). Both of Long's estimates may be well off the mark, and the amount of methamphetamine that can be produced from a given quantity of pseudoephedrine will depend on many variables, including the skill of the manufacturer and the desired purity of the final product. The Sentencing Commission opted for consistency by looking at the *typical* yield, *see Stacy*, 769 F.3d at 977; *Martin*, 438 F.3d at 625; *see also United States v. Goodhue*, 486 F.3d 52, 58 (1st Cir. 2007), and Haynes simply challenges this choice of a straightforward, uniform approach that's based on the amount of the pseudoephedrine.

Accordingly, we affirm the sentence.